Lewis E. CRAIN, Jr., Plaintiff,

v.

THE PROCTOR & GAMBLE DISABILITY BENEFIT PLAN, Defendant.

No. 97–2267–JWL.

United States District Court, D. Kansas.

July 2, 1998.

---

Richmond M. Enochs, Patrick F. Hulla, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Lewis E. Crain, Jr.

Douglas M. Weems, Daniel B. Boatright, Spencer, Fane, Britt & Browne, Kansas City, MO, for Proctor & Gamble Mfg. Co. and Proctor & Gamble Disability Ben. Plan.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

By this action, plaintiff Lewis Crain seeks review of a denial of disability benefits by defendant The Proctor & Gamble Disability Benefit Plan, pursuant to the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).[1] Specifically, plaintiff challenges defendant's decision to pay him partial disability benefits under the benefits plan instead of total disability benefits. The matter is presently before the court on defendant's motion for summary judgment or, alternatively, to strike plaintiff's demand for a jury trial and his claim for extra-contractual damages (Doc. 31). Because the court concludes that defendant's decision to deny total disability benefits was not arbitrary and capricious, the court grants defendant's motion for summary judgment, and plaintiff's suit is hereby dismissed.

### I. Facts

Beginning in 1990, plaintiff was employed by The Proctor & Gamble Manufacturing Company. As an employee, plaintiff became a participant in his employer's benefits plan. The plan provided that its Board of Trustees had discretionary authority to interpret the plan's terms and to determine eligibility for and entitlement to benefits under the plan.

The plan provided separately for total disability benefits and partial disability benefits. The plan defined "total disability" as follows:

"Total disability" means a mental or physical condition resulting from an illness or injury which is generally considered totally disabling by the medical profession. Usually, Total Disability involves a condition of such severity as to require care in a hospi-

1. In this action, which was removed from state court, plaintiff originally asserted a number of other claims, including claims against The Proctor & Gamble Manufacturing Company. Plaintiff has dismissed its non-ERISA claims, howev-er, and under the pretrial order, which now controls the case, plaintiff has asserted only a single claim for denial of benefits against the defendant plan.

tal or restriction to the immediate confines of the home.

A summary plan description (SPD) concerning disability benefits under the plan contained a similar definition:

**Total disability** means a physical or mental illness or injury which is generally considered totally disabling by the medical profession. Usually, a total disability requires care in a hospital or confinement at home.

The plan defined "partial disability" as follows:

"Partial Disability" means a mental or physical condition resulting from an illness or injury because of which the Participant cannot perform regular duties but can perform other useful duties. Thus, a condition of Partial Disability does not necessarily prevent the Participant from performing useful tasks, utilizing public or private transportation, or taking part in social or business activities outside the home.

The benefits SPD described "partial disability" as follows:

You'll qualify as **partially disabled** if an off-the-job physical or mental illness or injury keeps you from performing your regular duties—but doesn't keep you from performing other useful duties either for the Company or another employer.

Partial disability benefits were limited in duration under the plan to 52 weeks.

In 1993, plaintiff began receiving total disability benefits from defendants. Plaintiff then applied for social security benefits, as instructed by defendant. On March 28, 1994, plaintiff was notified by the Social Security Administration (SSA) that, based on plaintiff's medical reports, he did not qualify for benefits because he was not disabled under the SSA's rules. The notice stated:

We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work. You said you are disabled because of hypertension; diabetes mellitus; degenerative joint disease; kidney disorder; hypertriglyceridemia; azotemia. The evidence from your treating physicians show that you do have some restrictions resulting from these conditions. However, these restrictions do not limit you to the degree required by this program.

In spite of these restrictions the evidence shows that you have the ability to do the type of work you previously did as a statistical quality control engineer.

The notice explained that, to qualify a person for benefits, the health problems had to keep the person "from doing any kind of substantial work," i.e., "physical or mental work a person is paid to do."

On July 15, 1994, defendant notified plaintiff of its decision that plaintiff was only partially disabled under the plan. Defendant's decision was based on a report by Dr. Allen Parmet dated June 20, 1994. Dr. Parmet's report was based on a review of plaintiff's medical records and an independent medical examination (IME) of plaintiff conducted by Dr. Parmet on June 17, 1994. In his report, Dr. Parmet diagnosed plaintiff with diabetes mellitus, chronic renal failure, gout, hypertension, and degenerative joint disease. Dr. Parmet made the following recommendations:

Due to the multiple soft tissue and joint problems, Mr. Crain is unable to wear safety boots or shoes at this time. He is also unable to stand for prolonged periods of time. Due to his diabetes and renal failure he should not be involved in rotating shift or work in thermally stressful environments. I would therefore recommend that he be returned to duty in a sedentary position which allows him to sit 90% or more of the time and to move around as needed. He should not be required to routinely lift more than about twenty (20) pounds and should be permitted to wear comfortable shoe wear such as running or jogging shoes.

Based on Dr. Parmet's recommendation that plaintiff be allowed to return to work under certain restrictions, defendant determined that plaintiff was only partially disabled under the plan.

Shortly after this determination, plaintiff discussed the restrictions with Proctor & Gamble's personnel manager. Plaintiff was

told that all production jobs at Proctor & Gamble either were thermally stressful or required standing. Plaintiff was further told that he was not eligible for a clerical position with the company because he had failed a clerical test in 1990. Thus, plaintiff was notified that there were no positions available for him at Proctor & Gamble.

In April 1995, defendant notified plaintiff that his partial disability benefits would terminate on June 18, 1995, and that he could appeal the benefit determination within 60 days. Plaintiff did appeal the decision to defendant on May 23, 1995. Plaintiff submitted only a letter from Dr. Raymond Jeffers, who had treated plaintiff since June 1993. In the letter, dated May 19, 1995, Dr. Jeffers noted that plaintiff had had diabetes mellitus, hypertension, and some degenerative joint disease, and he stated that plaintiff had been having an "overall deterioration of his condition." Dr. Jeffers noted that plaintiff had not been able "to return to his usual work duties" because of his problems with pain in standing, raising his arms, and bending down. Dr. Jeffers concluded as follows: "It is my opinion that Mr. Crain cannot return to work at this time due to continue [sic] physical disability secondary to his degenerative disease as well as uncontrolled hypertension and diabetes."

Defendant responded on June 15, 1995. Defendant stated that, upon review of the submitted appeal, more medical evidence was needed to make a final determination. Dr. Parmet then conducted another examination of plaintiff on July 14, 1995. In his subsequent report, Dr. Parmet noted plaintiff's physical complaints. Dr. Parmet also noted the following statements by plaintiff:

> [Plaintiff] states he has started a business on his own at home and does a lot of work around his home. He reported that he has recently patented a device called "TV Pal" and is working on some other inventions. He stated he was very limited in his manual tasks, but has been mentally very creative in the last year.

Dr. Parmet reported the results of his physical examination of plaintiff and noted that plaintiff "was able to sit in the examining room during a conversation and move freely around off and on the chair for approximately half an hour." Dr. Parmet concluded as follows:

> Review of additional records provided by his personal physician, Raymond Jeffers, provided information that in Dr. Jeffers' opinion Mr. Crain was unable to perform physical activity. My impression is that he is capable of performing sedentary duties and is in fact doing so at his home at the present time. He is therefore not totally disabled, but is capable of performing sedentary duties. He is not able to resume work at the light to medium level or resuming [sic] his previous duties for Proctor & Gamble.

On July 31, 1995, defendant notified plaintiff that it had denied his appeal. Defendant stated that, based on its review of Dr. Parmet's report and other information in plaintiff's file, it found that plaintiff was partially disabled as defined in the plan. Specifically, defendant noted: "According to Dr. Parmet's report, you are capable of performing sedentary duties and are in fact doing so at home at the present time." On August 17, 1995, defendant notified plaintiff that, because plaintiff could not return to his former job and other positions were not available, plaintiff's employment would be terminated.

Defendant's file on plaintiff included a newspaper article about him dated May 21, 1995. The article centered on plaintiff's development and marketing of a patented product called the TV Pal. The product was a pouch to hold various items. The article noted plaintiff's psychology degree and his experience working as an engineer. The article further noted that plaintiff was the CEO and president of Crain Enterprise, an engineering, development, and marketing firm that he founded in 1990. The article reported that plaintiff formed the company while working as an engineering consultant and then expanded the company to include product development and marketing. Finally, the article stated that a small business loan to Crain Enterprise would be used "to procure patent rights for other products the company is working on."

## II. Standard of Review

Plaintiff seeks review of defendant's denial of benefits under the plan. "[A] denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which event an arbitrary and capricious standard is appropriate. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

■ The plan here explicitly granted defendant discretionary authority, and the arbitrary and capricious standard is therefore appropriate in this case. Indicia of arbitrary and capricious actions include a lack of substantial evidence, a mistake of law, and bad faith. *Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377, 380 n. 4 (10th Cir. 1992). "The touchstone of [the court's] inquiry is whether defendant's interpretation of its plan is reasonable." *Semtner v. Group Health Service of Oklahoma, Inc.,* 129 F.3d 1390, 1393 (10th Cir.1997); *see McGraw v. Prudential Ins. Co. of Am.,* 137 F.3d 1253, 1259 (10th Cir.1998) ("A decision to deny benefits is arbitrary and capricious if it is not a reasonable interpretation of the plan's terms."); *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 827 (10th Cir.1996) (determination was "reasonable" and therefore was not arbitrary and capricious).

## III. Analysis

■ Plaintiff first argues that defendant should not be permitted to rely on a restrictive, literal definition of "total disability", by which plaintiff would be required to have been confined to his home or a hospital. Plaintiff cites *Torix v. Ball Corp.,* 862 F.2d 1428 (10th Cir.1988), in support of this argument.

In *Torix,* the plaintiff was denied benefits under a plan provision requiring the participant to be "prevented from engaging in any occupation or employment for wages or profit." *Id.* at 1429 n. 1. The Tenth Circuit held that such language should not be construed literally, such that an ability to sell pencils for a small amount, for example, would preclude benefits; rather, the court imposed a standard requiring the participant "to establish a physical inability to follow any occupation from which he can earn a reasonably substantial income rising to the dignity of an income or livelihood, although the income may not be as much as was earned prior to the disability." *Id.* at 1431. The court then remanded the case because the defendant's denial of benefits may have been based on "an unduly restrictive and therefore unreasonable interpretation of the plan's provisions." *Id.*

Plaintiff contends that the same standard should be applied here and that a requirement of a disability rising to the level of home confinement would be unreasonably restrictive. It is clear, however, that defendant, in denying plaintiff total disability benefits, did not strictly apply the plan's definition of "total disability" to require a showing of home or hospital confinement. Rather, defendant denied benefits based on its determination that plaintiff met the definition of "partial disability", in that plaintiff could not perform his regular job, but was able to "perform other useful duties." Specifically, defendant concluded that plaintiff could perform sedentary duties, such as those performed by plaintiff in running his home businesses. Thus, defendant did not rest on the mere fact that plaintiff was not bedridden, but denied plaintiff benefits only when it determined that plaintiff could engage in other employment. Accordingly, defendant's interpretation of the plan's provisions was not unreasonably restrictive.

■ Plaintiff next contends that defendant's finding that plaintiff could perform sedentary work was arbitrary and capricious. Plaintiff points to Dr. Jeffers's opinion that plaintiff "cannot return to work at this time." Plaintiff has also submitted a report by Michael Dreiling, a vocational expert, dated February 16, 1998, in which Mr. Dreiling concluded that plaintiff "is not a candidate to return back to work in the labor market due to the significant medical problems described." The court may not consider this report, however, because such evidence was not before defendant when it made its benefits determination. *See Sandoval,* 967 F.2d at 380 ("In determining whether the plan

 

administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision.").

Finally, plaintiff takes issue with Dr. Parmet's conclusions. Plaintiff argues that he cannot perform sedentary work because he cannot sit for long periods of time. Plaintiff also contends that a home business should not be considered as an option because such an occupation requires the performance of various tasks and because his own home businesses were unsuccessful. Again, however, these arguments were not presented to defendant at the time of its determination and therefore may not be raised at this time.

The court concludes that defendant's decision to deny benefits based on the information before it was not arbitrary and capricious. Defendant did not merely deny plaintiff's claim as a matter of course, but instead commissioned another IME when plaintiff appealed its decision. Defendant's subsequent reliance on Dr. Parmet's opinion that plaintiff could perform sedentary work under certain medical restrictions was eminently reasonable. Dr. Parmet's conclusion is amply supported by his examination and observation of plaintiff's physical limitations, as well as plaintiff's comments to Dr. Parmet concerning his work out of his house. Defendant's determination that plaintiff was not totally disabled is also supported by the similar finding by the SSA.

Plaintiff relies heavily on Dr. Jeffers's conclusion that plaintiff's physical abilities were limited. Plaintiff appears to argue that such physical limitation should be enough to make him totally disabled. The court does not agree. Defendant's consideration of non-physical work to satisfy the definition of partial disability was reasonable. Its conclusion that plaintiff could perform such work was also reasonable and supported, especially in light of plaintiff's home-based marketing and development business and his experience as a consultant. Moreover, defendant was not required to credit Dr. Jeffers's opinion over that of Dr. Parmet; defendant did not act

improperly in giving more weight to the independent opinion of Dr. Parmet, who considered Dr. Jeffers's report and nonetheless concluded that plaintiff was only partially disabled, than it gave to that of Dr. Jeffers, whose report did not address plaintiff's ability to do sedentary work.

In summary, the court concludes that defendant's denial of total disability benefits based on a determination that plaintiff was only partially disabled under its benefits plan was not arbitrary and capricious. Summary judgment in favor of defendant is therefore appropriate.[2]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (Doc. 31) is granted, and plaintiff's suit is hereby dismissed.

**IT IS SO ORDERED.**

---

**2.** In light of this conclusion, the court need not address the other issues raised by defendant's motion.